## BERNSTEIN v. N. V. NEDERLANDSCH–AMERIKAANSCHE STOOMVAART–MAATSCHAPPIJ.

District Court, S. D. New York.

Nov. 21, 1946.

298

Bennet, House & Couts, of New York City (William S. Bennet, Victor House and Bernard A. Finkel, all of New York City, of counsel), for plaintiff.

Burlingham, Veeder, Clark & Hupper, of New York City (John L. Galey, Norman M. Barron and Hervey C. Allen, Jr., all of New York City, of counsel), for defendant.

LEIBELL, District Judge.

This is a motion by the defendant, Holland-America Line, under Rule 14, Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c, for leave to make The Chemical Bank & Trust Company a third-party defendant to this action, and that there be served upon it a summons and third-party complaint, of which copies are annexed to the motion papers. The Holland-America Line bases its motion on the contention that The Chemical Bank is or may be liable to it for all or part of the claim made in this action by Bernstein against the Holland-America Line.

The third-party complaint alleges, as a first count, that Arnold Bernstein, the plaintiff, has filed against the defendant, Holland-America Line, an amended complaint (a copy of which is annexed to the third-party complaint). The substance of the amended complaint is then pleaded as follows:

"2. Said amended complaint alleges in substance that at the times therein mentioned plaintiff was and still is the sole owner and entitled to the immediate possession of the entire capital shares of Red Star Linie G.m.b.H., a German limited liability Company, hereinafter referred to as Red Star Line, which shares, at all times therein mentioned represented the full and exclusive ownership of said Red Star Line; that, as such, the plaintiff was and now is entitled to the assets of the Red Star Line on any liquidation thereof; that in or about June, 1939, Red Star Line owned two vessels, the S.S. Pennland and the S.S. Westernland and the equipment thereof and certain other assets more fully described in said amended complaint; that plaintiff was arrested and imprisoned by Nazi officials in January, 1937, and was thereafter compelled by duress to execute documents purporting to transfer and to sanction the transfer of the entire capital shares of Red Star Line to one Marius Boeger and that by reason of said duress said documents are null and void; that nevertheless said Marius Boeger took possession and control of Red Star Line and undertook the disposition of its assets and that such assets were transferred to and taken into possession by the defendant illegally and without fair and adequate consideration.

"3. Said amended complaint contains five alleged causes of action as follows:

"(1) For conversion of said vessels and other assets;

"(2) For wrongful detention of said vessels and other assets;

"(3) For refusal of the defendant to return to the plaintiff said vessels and other assets on demand;

"(4) For loss of the use of said vessels and other assets since June, 1939;

"(5) For money had and received by the defendant, including insurance proceeds, selling price and earnings and profits and benefits arising from said assets.

"The plaintiff claims as damages $3,300,-000. under the first, second and third causes of action; $2,500,000. under the fourth cause of action and $3,360,000. under the fifth cause of action."

The third-party complaint further alleges that the Holland-America Line is a corporation organized and existing under the laws of The Kingdom of the Netherlands and that Chemical Bank & Trust Company is a New York banking corporation with its principal offices in the City of New York.

Paragraph "5" of the third-party complaint alleges:

"5. Possession and control of said steamships Pennland and Westernland, which were of German registry, was taken over by Holland-America Line in or about June, 1939, under and pursuant to an agreement and conveyance executed by Chemical Bank and signed also by Holland-America Line at Rotterdam, Holland, as of June 2, 1939. Said agreement and conveyance recited in substance that Chemical Bank had become the owner of said steamers Pennland and Westernland under a separate agreement of the same date with Red Star Line of Hamburg, Germany; that Holland-America Line agreed to purchase these steamers in their then condition with all equipment and gear used on the vessels, when being operated as freight and passenger steamers, for the total purchase price of £350,000 British sterling (£175,000 cash and £175,000 under terms and on conditions as stipulated therein) and in said agreement Chemical Bank agreed to cause said vessels to be delivered to Holland-America Line at Antwerp or Rotterdam in their then condition but free of all mortgages and encumbrances. A copy of said agreement and conveyance is attached hereto, made a part hereof and marked Exhibit C and said agreement is hereinafter referred to as Exhibit C."

It is also alleged that the vessels were delivered to Holland-America Line and were transferred to Netherlands registry; that the sum of £175,000 was paid to Chemical by Holland-America and that Holland-America Line has performed on its part all conditions of its agreement with Chemical up to the present time.

Paragraphs "7" and "9" of the third-party complaint further allege:—

"7. Under and by virtue of the laws of The Kingdom of the Netherlands and in accordance with the law of the State of New York Chemical Bank, in and by said agreement (Exhibit C) and by the sale of said vessels, warranted to Holland-America Line that at the time of the making of said agreement and the delivery of said vessels to Holland-America Line Chemical Bank was the owner thereof and that it had full power and right to convey and transfer to Holland-America Line lawful title and rightful possession of said vessels with all equipment and gear used thereon when being operated as freight and passenger steamers and that Holland-America Line would enjoy quiet possession thereof; and Holland-America Line relied on such warranty in purchasing said vessels and in exercising the rights of ownership with respect thereto."

"9. Holland-America Line, by reason of the premises, and in accordance with the law of The Kingdom of the Netherlands as well as the laws of the State of New York is entitled to recover of Chemical Bank any amounts which the plaintiff may recover from Holland-America Line on account of the value, earnings, benefits, loss of use, use or disposition of said vessels, or the proceeds thereof, or the proceeds of insurance thereof."

As a second count, the third-party complaint re-alleges paragraphs 1 to 6 of the first count and goes on to plead that—

"11. As of June 2, 1939, at Rotterdam, Holland, a further agreement was entered into, executed by Holland-America Line and purporting to be executed in the name of and in behalf of Red Star Line by certain officials, Wagner and Pohl by name, described therein as Geschaeftsfuehrer or Managing Directors, and by Marius Boeger, as trustee, which agreement provided for the assignment and transfer to Holland-America Line of certain alleged assets of Red Star Line and for the assumption by Holland-America Line of certain obligations toward Red Star Line, all of which are more fully described in said agreement, a copy of which is attached hereto, made a part hereof and marked Exhibit D. Said agreement is hereinafter referred to as Exhibit D.

"12. Red Star Line for sometime prior to June 2, 1939, had been indebted to Chemical Bank in an amount exceeding $1,-400,000. Mortgages or other liens had been or were represented by Chemical Bank to have been placed on the said vessels Westernland and Pennland and all or a substantial part of the stock of the Red Star Line had been or was represented by Chemical Bank to have been pledged to Chemical Bank or otherwise appropriated to secure said indebtedness and the interest thereon. Prior to June 2, 1939, Red Star Line was or was represented by Chemical Bank to be and to have been for some time, in default in the payment or reduction of the principal and interest of said indebtedness and for some time prior to June 2, 1939, said Chemical Bank had and maintained a representative or representives in Germany charged with the duty of protecting its said claim against the Red Star Line and its interest as creditor and as lienor and mortgagee of the assets of Red Star Line and with the duty of disposing of said ships and other assets of Red Star Line so as to satisfy said indebtedness. By reason of the presence of the said representatives of Chemical Bank in Germany and their duties there, said representatives and the Chemical Bank had special knowledge of the relations of Red Star Line with its stockholders and creditors and with the German Government.

"13. Chemical Bank as an inducement to Holland-America Line to enter into the agreement and accept the conveyance herein called Exhibit C, and to pay the consideration therein provided for, and to enter into the agreement herein called Exhibit D, represented to Holland-America Line that Chemical Bank through one of its representatives, H. A. Kollmar, was fully authorized and empowered to transfer and convey to Holland-America Line good title to said steamers Westernland and Pennland, together with their equipment and gear and the lawful possession and control thereof, and that said Wagner and Pohl, as Geschaeftsfuehrer or managing directors of Red Star Line, and Marius Boeger, as Trustee, were authorized and empowered, in the name and behalf of Red Star Line, to transfer and convey to Holland-America Line the assets and to enter into and perform the undertaking described in Exhibit D, and Chemical Bank further represented to Holland-America Line in substance that any action on the part of Red Star Line or its stockholders and creditors and on the part of the German Government necessary to make the instruments, Exhibits C and D respectively, as executed, valid, binding and effective according to their terms, had been duly taken.

The second count also contains allegations that the Holland-America Line in entering into and performing said agreements and in assuming the obligations therein provided and in receiving the assets and exercising possession and control thereof, "believed and relied on the said representation of the Chemical Bank, and that under the laws of the Netherlands and the laws of the State of New York the Chemical Bank would be liable to Holland-America Line for any amounts which plaintiff might be entitled to recover from Holland-America Line".

The prayer for relief reads as follows:

"Wherefore, the third party plaintiff, N. V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij, also known as Holland-America Line, demands judgment against the third party defendant, The Chemical Bank & Trust Company, for all

sums that may be adjudged against the defendant, N. V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij, also known as Holland-America Line, in favor of the plaintiff Arnold Bernstein, also known as Arnold M. Bernstein."

The amended complaint of the plaintiff Bernstein alleges, as to jurisdiction, that plaintiff is a resident of the State of New York and a citizen of the United States of America and that defendant (Holland-America Line) is a foreign corporation organized and existing under the laws of the Kingdom of the Netherlands conducting business in the State of New York, with offices in the Borough of Manhattan, City of New York.

Plaintiff's attorneys oppose the motion (1) on the ground that there is no diversity of citizenship between plaintiff Bernstein and the proposed third-party defendant, Chemical Bank; (2) on the ground that the issues are not the same on plaintiff's claim against the defendant and defendant's claim against Chemical Bank; and that the trial of plaintiff's claim, together with defendant's claim, would tend to confuse the issues and delay and prolong the trial; and (3) on the ground that Holland-America Line has been guilty of laches in not making this motion sooner, since the plaintiff's original complaint was filed in this Court on June 1, 1945.

■ Taking up point (3) first, the court file shows that defendant's answer to the original complaint was served December 1, 1945; that the amended complaint was not served until August 2nd, 1946; and that defendant's answer thereto was served August 23rd. The papers on the present motion were served by defendant October 18, 1946; the motion was argued November 1, 1946. Meanwhile plaintiff has been examining the defendant before trial. That examination was still unfinished November 8, 1946, although plaintiff's attorney says it "has been virtually completed". Plaintiff's examination by defendant is to follow the completion of defendant's examination. The case was on the Reserve Calendar of this Court October 4, 1946, and was adjourned one month. A jury trial has been demanded by plaintiff. I have read the affidavits of the respective attorneys as to the progress of this litigation and I fail to note any ground for holding that defendant, Holland-America Line has been guilty of laches in making the present motion.

■■ As to plaintiff's contention number (2) that the issues are so dissimilar that a jury would become confused if the plaintiff's claim against defendant were tried at the same time as defendant's claim against Chemical, there seems no basis for that contention. That part of defendant's transactions by which defendant acquired the two vessels, the S.S. Pennland and the S.S. Westernland (see Ex. C annexed to the proposed third-party complaint, the agreement between Chemical Bank and Holland-America Line, dated Rotterdam, June 2, 1939) will necessarily be the subject of proof in connection with plaintiff's claim. As to the acquisition by Holland-America Line from the Red Star Line of the good will of Red Star, the exclusive right to use the tradename "Red Star Line" and Red Star's house flag, and all the rights of Red Star as a member of "certain listed steamship line conferences" and to the use of piers—all that was the subject of an agreement between Red Star and Holland-America, also dated Rotterdam, June 2, 1939 (see Ex. D annexed to the proposed third-party complaint). The issues as to the Red Star—Holland-America agreement are closely intertwined with those arising from the Chemical Bank—Holland-America agreement. A reading of the two agreements discloses how they were related parts of one business deal and were as closely related to each other as ships and docks and membership in steamship conferences naturally would be in such a transfer. The close relationship of the Chemical Bank to the transactions of defendant with it and with the Red Star Line further appears from Exhibit E annexed to Mr. Galey's affidavit of October 18, 1946. Said exhibit is an agreement between Red Star and Chemical, dated June 2, 1939, under which the two vessels were to be delivered by Red Star to Chemical and Chemical agreed to discharge Red Star from a debt which amounted to $1,412,319.42 as of May 15, 1939. The trial of defendant's claim to-

gether with plaintiff's claim will, of course, delay and prolong somewhat the trial of plaintiff's claim. But as against that result there must be weighed the saving in time of the court in trying one case instead of two, thus avoiding both circuity of action and a duplication of work.

Plaintiff's contention number (1) is reducible to this:—that a third-party defendant may not be brought in on motion of the original defendant, to answer over to the defendant in the event that plaintiff is successful in establishing his claim against the defendant, unless there is diversity of citizenship between the third-party defendant and the plaintiff, as well as diversity of citizenship between the third-party defendant and the original defendant. Plaintiff contends that the motion of the defendant herein should be denied because the third-party defendant is a citizen of the same state (New York) as is the plaintiff.

■ ■ If a defendant's motion under Rule 14 to bring in a third-party defendant is solely for the purpose of offering him to the plaintiff as a party defendant who may also be liable to the plaintiff for all or part of the plaintiff's claim against the original defendant, the third-party defendant must be a citizen of a different state than plaintiff's. Friend v. Middle Atlantic Transportation Co. et al., 2 Cir., 153 F.2d 778. Any judgment recovered by a plaintiff against a third-party defendant of the same citizenship as plaintiff is void because of lack of jurisdiction of the Federal Court over such a claim, if the claim of plaintiff against the third-party defendant is based on a state created right and does not involve a Federal question. That is what the Circuit Court of Appeals, Second Circuit, held in the Friend case, supra.

■ The defendant's counsel sums up the main question presented by this motion as follows:—"The proposed third party complaint does not attempt to bring in the Chemical Bank because the Bank is liable to the plaintiff. It merely asks that the Bank answer to Holland-America Line for any amounts recovered by the plaintiff from Holland-America Line (see Wherefore Clause in proposed third party complaint). The proposed third party complaint is based on the warranty of title given by the Bank to Holland-America Line and on the representations made by the Bank to Holland-America Line."

In support of that contention there is the authority of Professor Moore (Moore's Federal Practice, Vol. I, p. 738 and the Cumulative Supplement for 1945, pages 347, 348); also the Circuit Court of Appeals of the Fifth Circuit (Williams v. Keyes, 5 Cir., 125 F.2d 208) and some cases in the District Courts (Falcone v. City of New York, D.C., 2 F.R.D. 87, and cases cited therein). See also Restatement—Restitution, § 91.

There are other considerations, such as the Statute of Limitations, which also support defendant's motion. Plaintiff did not commence this action until June 1, 1946, not quite six years after the transactions by which the Holland-America Line acquired on June 1, 1939, the two vessels and other assets, formerly of the Red Star Line. Plaintiff has been in this country since September 1, 1939. Holland was not invaded by the Nazi German Government's troops until May 1940.

Defendant's motion is granted. Settle order accordingly.