THE CLEVELAND-CLIFFS IRON COMPANY v FIRST STATE
INSURANCE COMPANY

Docket No. 45183. Submitted May 13, 1980, at Marquette.—Decided
April 21, 1981.

The Cleveland-Cliffs Iron Company brought an action in the
Marquette Circuit Court against the First State Insurance
Company seeking to collect money claimed to be due it pursu-
ant to an all risks property insurance policy issued by First
State. Cleveland-Cliffs averred that cracking occurred in the
flow duct of one of its plants, causing a "burn out" resulting in
the plant's closing, and that the accident required $33,000 in
repairs and resulted in $934,182 in lost business. Both risks
were covered by the insurance policy.

First State answered that the loss was "directly or indirectly
caused by fault, defect, error or omission in design, plan or
specification", which the contract excluded from coverage. First
State moved to implead third-party defendants Allis-Chalmers
Corporation and George P. Reintjes Company, Inc. This motion
was granted by the court. The third-party complaints averred
negligence on the parts of Allis-Chalmers and Reintjes in the
design and construction of the errant refractory lining of the
flow duct system. First State contended that, in the event it
was held liable to Cleveland-Cliffs in the main action, it had a
right of "idemnification" from the third-party defendants. In
fact, as the trial court recognized, if First State had any rights
against the third-party defendants it was for "subrogation" and
not "indemnification". First State filed a third-party complaint
on the same grounds against Project Systems, Inc. (PSI). There-
after, Cleveland-Cliffs filed direct complaints against Allis-Chal-
mers, Reintjes, and PSI. Allis-Chalmers, Reintjes, and PSI all
moved for summary judgment in reference to First State's
complaints on the basis that First State had no present right of
subrogation and, therefore, no third-party claim. Allis-Chal-
mers, Reintjes, and PSI also moved for summary or accelerated

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 20 Am Jur 2d, Courts §§ 84-86.
[1] 59 Am Jur 2d, Parties §§ 202, 203.
[2, 4 59 Am Jur 2d, Parties §§ 199-204.

judgment against Cleveland-Cliffs. The court, William S. Easton, J., granted the motions of the third-party defendants against First State on the grounds that it had no right of subrogation until it paid Cleveland-Cliffs, and, therefore, impleader was improper. The trial court also granted partial summary judgment in favor of Allis-Chalmers and PSI as to the business loss damages on the grounds that Cleveland-Cliffs did not answer their claim that the construction contract limited liability to direct damages. First State appeals. *Held:*

The court rule governing third-party practice allows the impleading of a third-party defendant based on a subrogation theory, in the discretion of the trial court, even where the defendant and third-party plaintiff has not yet paid the party through whom it claims subrogation rights. The trial court erroneously concluded it had no discretion to allow the impleader prior to First State's paying Cleveland-Cliffs.

Remanded.

1. PLEADING — THIRD-PARTIES — COURT RULES.

The court rule governing third-party practice is a rule of procedure and does not create any substantive rights (GCR 1963, 204).

2. SUBROGATION — INSURANCE.

An insurer may not become subrogated to the rights of the insured until it has paid the insured.

3. COURTS — COURT RULES — JUDICIAL CONSTRUCTION.

It is presumed that the Michigan Supreme Court, in adopting a court rule from another jurisdiction, had in mind any construction placed upon it by the courts of the jurisdiction from which it was taken.

4. PLEADING — THIRD PARTIES — SUBROGATION — COURT RULES.

The court rule governing third-party practice allows the impleading of a third-party defendant based on a subrogation theory, in the discretion of the trial court, even where the defendant and third-party plaintiff has not yet paid the party through whom it claims subrogation rights; failure to recognize this discretion when ruling on a motion for impleader is error (GCR 1963, 240.1).

*Kendricks, Bordeau, Casselman, Adamin & Keefe, P.C.,* for First State Insurance Company.

*McDonald & Shortley,* for George P. Reintjes Company, Inc.

*Quinnell & Heitman* (by *Michael G. Summers*), for Allis-Chalmers Corporation and Project Systems, Inc.

Before: MACKENZIE, P.J., and BRONSON and ALLEN, JJ.

BRONSON, J. Plaintiff, Cleveland-Cliffs Iron Company (Cleveland-Cliffs), filed suit against defendant First State Insurance Company (First State) on January 25, 1977, in the Marquette County Circuit Court, seeking to collect monies claimed to be due it pursuant to an all risks property insurance policy issued by First State. Cleveland-Cliffs averred that on July 1, 1975, cracking occurred in the flow duct of its Empire III pellet plant, causing a "burn out" resulting in the plant's closing. It further averred that the accident required $33,000 in repairs and resulted in $934,182 in lost business. Both risks were covered by the insurance policy.

First State answered on April 18, 1977, and pled as an affirmative defense that the loss was "directly or indirectly caused by fault, defect, error or omission in design, plan or specification", which the contract excluded from coverage. On May 16, 1977, First State moved to implead third-party defendants Allis-Chalmers Corporation (Allis-Chalmers) and George P. Reintjes Company, Inc. (Reintjes). This motion was granted by leave of the court on June 13, 1977. The third-party complaints averred negligence on the parts of Allis-Chalmers and Reintjes in the design and construction of the errant refractory lining of Cleveland-Cliff's flow duct system. First State contended that, in the

event it was held liable to Cleveland-Cliffs in the main action, it had a right of "indemnification" from the third-party defendants. In fact, as the trial court recognized, if First State had any rights against the third-party defendants it was for "subrogation" and not "indemnification".

On July 5, 1978, First State filed a third-party complaint on the same grounds against Project Systems, Inc. (PSI). Thereafter, on August 10, 1978, Cleveland-Cliffs filed direct complaints against Allis-Chalmers, Reintjes, and PSI.

Allis-Chalmers, Reintjes, and PSI all moved for summary judgment in reference to First State's complaints on the basis that First State had no present right of subrogation and therefore no third-party claim. Allis-Chalmers, Reintjes, and PSI also moved for summary or accelerated judgment against Cleveland-Cliffs. Plaintiff did not answer these motions.

On April 18, 1978, a visiting judge assigned to hear this matter conducted a hearing on the motions. The court granted the motions of the third-party defendants against First State on the grounds that it had no right of subrogation until it paid Cleveland-Cliffs and, therefore, impleader was improper. The trial court also granted partial summary judgment in favor of Allis-Chalmers and PSI as to the business loss damages on the grounds that Cleveland-Cliffs did not answer their claim that the construction contract limited liability to direct damages.

First State now appeals as of right the trial court's ruling that impleader was improper because it had not paid Cleveland-Cliffs and, thus, had no right of subrogation.

Resolution of this dispute depends on the proper

construction be be given GCR 1963, 204.1(1), which provides:

".1 When Defendant May Bring in Third Party.

"(1) Subject to the provisions of § 3030 of the Insurance Code of 1956, before the service of his answer a defendant may move *ex parte* or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action *who is or may thereafter be liable to such third-party plaintiff, by right of contribution or otherwise,* for all or part of the plaintiff's claim against him." (Emphasis added.)

The arguments advanced by the respective parties are clear and simple. First State's argument is that each of the third-party defendants is a party *"who may thereafter be liable"* to it by way of subrogation. The counter-argument is that the court rule creates no substantive rights, and the doctrine of subrogation permits no cause of action until the purported subrogee pays its claimant.

It is well-established that GCR 1963, 204 is a rule of procedure creating no substantive rights. *Husted v Consumers Power Co,* 376 Mich 41, 47; 135 NW2d 370 (1965), *Duncan v Beres,* 15 Mich App 318, 322; 166 NW2d 678 (1968), *White v McLouth Steel Corp,* 18 Mich App 688, 692; 171 NW2d 662 (1969), *lv den* 383 Mich 791 (1970). It has also been held that an insurer may not become subrogated to the rights of the insured until it has paid its insured. *Associated Truck Lines v Employers' Fire Ins Co of Boston, Mass,* 275 Mich 74, 76; 265 NW 780 (1936), *Poynter v Aetna Casualty & Surety Co,* 13 Mich App 125, 128; 163 NW2d 716 (1968). However, these cases have nothing to do with principles of third-party practice.

Third-party defendants contend to hold that

First State could implead them prior to payment of Cleveland-Cliff's claim would, in effect, be creating a substantive right, to wit: the right to subrogation prior to payment of the underlying claim. First State on the other hand argues that such a construction would create no substantive right but, rather, would merely as a matter of procedure accelerate the point in time at which the doctrine of subrogation could be relied on in a limited number of cases. First State seeks to distinguish an independent action for subrogation brought by the insurer (manifestly requiring payment to its claimant prior to institution) and procedural rights that are conferred upon an insurer by virtue of GCR 1963, 204.1(1). What constitutes a rule of procedure as opposed to a rule of substance has challenged and baffled generations of lawyers. Ultimately, however, we conclude that GCR 1963, 204.1(1), does allow third parties to be impleaded based on their potential liability via subrogation.

GCR 1963, 204 was adapted from Federal Rule of Civil Procedure 14(a). The Federal rule contains language substantially similar to that used in GCR 1963, 204. As construed by those Federal courts considering the problem, rule 14(a) has been held broad enough to allow the impleading of a third-party defendant based on a subrogation theory even where the defendant and third-party plaintiff has not yet paid the party through whom it claims subrogation rights. *Inter alia: Glens Falls Indemnity Co v Atlantic Bldg Corp,* 199 F2d 60 (CA 4, 1952), *Concordia College Corp v Great American Ins Co,* 14 FRD 403 (D Minn, 1953), *St Paul Fire & Marine Ins Co v United States Lines Co,* 258 F2d 374 (CA 2, 1958), *cert den* 395 US 910; 79 S Ct 587; 3 L Ed 2d 574 (1959), *Monarch Industrial Corp v American Motorists Ins Co,* 276 F Supp 972 (SD

NY, 1967), *International Harvester Co v General Ins Co of America,* 45 FRD 4 (ED Wis, 1968).[1]

The facts of this case are indistinguishable from those of *St Paul Fire & Marine Ins Co, supra,* in any persuasive manner. There, the third-party defendant persuaded the district court that, because the insurer had not paid its insured, it had no right of subrogation so that rule 14(a) did not allow impleader. The Second Circuit Court of Appeals reversed, holding:

"USL bases its argument upon the grounds that until the Insurance Company has been held liable the Insurance Company has not been damaged and possesses no right of subrogation. The court below argued that subrogation would not occur until the loss had been paid and that the Insurance Company, therefore, had no right of subrogation at the time it served its third-party complaint. The court also held that because the plaintiff had not sued USL within one year USL was relieved of liability by reason of the statute of limitations.

"These grounds are irrelevant. Rule 14 was designed to permit third-party defendants to be brought into the action so that the rights of the original defendant and the third-party defendant could be established in the same trial. To hold that the plaintiff must proceed against the Insurance Company and that the Insurance Company can take no steps to sue USL until liability has been determined and the judgment paid would make of Rule 14 a nullity." 258 F2d 374, 376.

Where a statute has been adopted from another

---

[1] Sister states with similar rules have also construed them as allowing impleader of a third-party defendant before payment to the claimant on theories which require payment to the claimant prior to bringing an independent action. See, *Krause v American Guarantee & Liability Ins Co,* 22 NY2d 147, 152-153; 239 NE2d 175, 178 (1968), *Chicago, R I & P R Co v Davila,* 489 P2d 760 (Okla, 1971), *In the Matter of Ted Heath,* 292 NC 369, 376; 233 SE2d 889, 893 (1977), *Fishel's Fine Furniture v Rice Food Market,* 474 SW2d 539, 541 (Tex Civ App, 1971). See, also, 3 Moore'e Federal Practice, § 14.08, p 14-243.

jurisdiction, it is presumed that the Legislature had in mind any construction placed upon it by the courts of the jurisdiction from which it was taken. *In re Cress' Estate,* 335 Mich 551, 564-565; 56 NW2d 380 (1953), *Goldman v Loubella Extendables,* 91 Mich App 212, 219; 283 NW2d 695 (1979), *lv den* 407 Mich 901 (1979). This rule is even more persuasive in the context presented here. It is inherently unlikely that our Supreme Court adopted rule 14(a) without any cognizance of how that rule had been construed in the Federal courts.

Apart from the Federal precedent, there is some suggestion in *Husted, supra,* that the construction we adopt here is proper. There, the Michigan Supreme Court held that grounds for impleader must be found in substantive rights apart from GCR 1963, 204. This basis "may be found in principles of indemnity, subrogation, contribution, warranty, or other substantive right". *Husted, supra,* 47. By this statement, the Court must have been referring to a future right of subrogation, prior to payment of the claimant by the insurer. Otherwise, the Court's reference to subrogation is nonsensical. After payment to the insured, any action for impleader is foreclosed. The main action having been determined, the insurer as subrogee would directly sue the party who would have been the third-party defendant in the impleader action. In short, it is meaningless to speak of subrogation as a basis for impleader, but only after the insurer has paid his insured, for the simple reason that after payment of the claim impleader is no longer needed by the insurer. It can them proceed in its own name as subrogee.[2]

[2] The sample form appearing in Honigman & Hawkins, Michigan Court Rules Annotated, Forms, § 958, pp 239-240, provides:

"Third-party plaintiff says:

"1. That the original plaintiff in the above entitled action claims, as

The policy arguments favoring the resolution of the problem we have chosen are many: (1) the avoidance of circuitous actions; (2) the avoidance of inconsistent verdicts in separate actions; and (3) negation of the inevitability in some cases that if the insurer contests the insured's claim, an adverse judgment will cut off the right of subrogation due to the running of the applicable statute of limitations. As the third-party defendants note, however, public policy arguments cut both ways. Were we to hold impleader inapplicable to this situation, in many instances it would have the tendency to expedite settlements between the insurer and the insured so that the subrogation claim would not be lost. As the third-party defendants suggest, this would advance important state policy. The insured claimant often needs the proceeds from the insurance policy to pay its expenses, to carry on with its business, or to carry on with an accustomed way of life. However, this policy consideration can be fostered without doing violence to the language of GCR 1963, 204.1(1). Under the rule, it is manifestly within the discre-

---

shown by the attached copy of the original complaint, a judgment against defendant therein [third-party plaintiff] for the amount of a fire insurance policy issued by defendant.

"2. That *if defendant is found liable* on said policy and pays the same to plaintiff, *defendant will become subrogated to plaintiff's rights* against any person who wrongfully caused the loss of plaintiff's property.

"3. That on _____, 19_, _____ [third-party defendant] caused the loss of plaintiff's said property by negligently setting off explosions in a water tunnel being constructed by third-party defendant near said property.

"Third-party plaintiff demands judgment against third-party defendant in the amount, if any, of plaintiff's judgment against third-party plaintiff." (Emphasis added.)

It is obvious that the authors of that learned treatise believe our resolution of the issue represents the proper view. As the trial court noted below, Honigman & Hawkins cannot alter the law in Michigan. Nonetheless, the treatise is persuasive and has often been cited by our Supreme Court. See, *Husted, supra.*

tion of the trial court to determine whether impleader should be allowed in an applicable case. In *Moyses v Spartan Asphalt Paving Co,* 383 Mich 314; 174 NW2d 797 (1970), the Supreme Court quoted with approval from 1 Gilmore, Michigan Civil Procedure Before Trial, setting forth the factors which should be considered before ruling on the impleader motion. The Court held:

"In acting upon a motion made under the rule [GCR 1963, 204.1] the judge will weigh the advantages of having the third party in the case against the following:

"1. The probability of delay, *United States v Jollimore* (1949), 2 FRD 148

"2. Complications of the trial, *McPherrin v Hartford Fire Ins Co* (1940), 1 FRD 88

"3. The timeliness of the motion, *Casey v Calmar Steamship Corp* (D Del, 1956), 138 F Supp 751

"4. The similarity of evidence, *Jones v Waterman SS Corp* (CA 3, 1946), 155 F2d 992

"5. *The possibility of prejudice to the plaintiff, FDIC v The National Surety Corp* (1950), 13 FRD 201; *Casey v Calmar Steamship Corp, supra.*

"6. Possibility of prejudice to third-party defendant, *American Fidelity & Casualty Co v Greyhound Corp* (CA 5, 1956), 232 F2d 89." *Id.,* 324-325 (emphasis added).

In our opinion, one form of prejudice is hardship engendered by the insurer's delay in paying its insured. For instance, if a homeowner with property insurance is unable to rebuild his or her home without the proceeds from the policy, this would justify the trial court in denying the impleader motion and forcing the insurance company to make the hard choice between paying its insured and bringing an action as subrogee or defending the claim against the insured. Another example, which is more relevant to Cleveland-

Cliff's position, is where the trial court concludes a business will face extreme economic hardship or be bankrupted by a delay in the payment of the insurance proceeds. In such cases, the insured's interest in prompt recovery can easily be said to outweigh the insurer's interest in subrogation parity.

In this case, the trial court concluded that it had no discretion to allow the impleader prior to First State's paying Cleveland-Cliffs. This conclusion was erroneous. As such this matter is remanded for reconsideration of the motions for summary judgment and impleader in light of this opinion.[3]

Remanded for proceedings consistent with this opinion.

---

[3] We want to make it clear that by this opinion we are not directing the trial court to reach a particular result on the impleader motion.